IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| BELTWAY PAVING COMPANY, INC., | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 21-cv-264 |
| PRUCO LIFE INSURANCE COMPANY | * |
| and | * |
| LISA M. MOORE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TIMOTHY S. MOORE | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Pending before me are the Motions to Dismiss filed by the Defendants, Pruco Life Insurance Company ("Pruco") and Lisa M. Moore, as personal representative of the estate of Timothy S. Moore (the "Estate"). The Defendants' Motions to Dismiss are fully briefed.[1] I have reviewed the filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, both Defendants' Motions to Dismiss are DENIED.

### BACKGROUND

Timothy S. Moore and Michael B. Williams, both deceased, were shareholders and directors of Beltway Paving Company, Inc. ("Beltway"). ECF No. 25, Second Amended Complaint ("SAC") ¶ 7. On September 28, 2017, Defendant Pruco issued an Individual Term Life

---

[1] ECF No. 28, Estate MTD; ECF No. 29, Pruco MTD; ECF No. 30, Opp.; ECF No. 32, Estate Reply; ECF No. 33, Pruco Reply.

Policy "upon the life of" Mr. Moore ("the Policy"). ECF No. 28-2, Policy; SAC ¶ 7. Mr. Moore was the Policy's owner as well as its insured. *Id.* The Policy named Mr. Williams as its sole beneficiary. Policy at 4.

Beltway alleges in its Second Amended Complaint that naming Mr. Williams as the beneficiary of the Policy was an error, and that Mr. Moore and Mr. Williams intended that the proceeds of the Policy would be paid to Beltway "to assist it in continued operations and to compensate for the loss of one of its shareholders, directors, and principal operators." SAC ¶ 7–8. Beltway also alleges that it "paid all premiums on the insurance policy." *Id.* ¶ 9.

Mr. Williams died in February 2020, and Mr. Moore never modified the Policy to name a different beneficiary. *Id.* ¶ 10. Beltway asserts in its Second Amended Complaint that this was due to Mr. Moore's ignorance of the fact that Mr. Williams was named the beneficiary in the first place, and that Mr. Moore believed until his death that Beltway was the beneficiary that would receive the Policy's proceeds. *Id.* Beltway claims that it continued to pay the premiums on the Policy following Mr. Williams's death because Beltway also believed that it, and not Mr. Williams, was the named beneficiary. *Id.* Beltway alleges that it "would have changed the name of the beneficiary following Williams's death had Beltway [] understood it needed to do so." *Id.*

Mr. Moore died on November 2, 2020, and "the remaining shareholder of Beltway Paving made a claim for payment of the insurance policy proceeds." SAC ¶ 11. Pruco responded to Beltway's claim by explaining "that the [P]olicy benefits would be paid to the Estate because Williams was identified as the beneficiary and he predeceased Moore." *Id.* Indeed, the Policy, which was attached as an Exhibit to both Motions to Dismiss, provides that if no beneficiary "survives the insured, [Pruco] will pay in one sum to the Insured's estate." Policy at 9.

2

Beltway alleges that "despite requests, Pruco has refused to pay the [P]olicy benefits as intended." SAC ¶ 13. Instead, Pruco "paid the proceeds of the insurance policy ($1,000,000.00) to the Estate on or about February 2021." *Id.* ¶ 14. Beltway asserts that "Pruco wrongfully [paid] the policy benefits to the Estate of Timothy Moore" and that the benefits instead "should have been paid to Beltway Paving as intended by all." *Id.*

Beltway filed a claim against Mr. Moore's Estate in the Circuit Court for Osceola County, Florida, where the Estate is probated, on or about March 16, 2021. *Id.* ¶ 15. Defendant Lisa M. Moore, the personal representative of the Estate objected to Beltway's claim. *Id.* ¶ 16.

Beltway filed this action on February 1, 2021. In it, Beltway seeks a declaration from the Court that Beltway is "the owner and beneficiary and the sole entity/individual entitled to receive the policy's death benefits." SAC ¶ 17. Alternatively, Beltway seeks equitable relief on the theory that the Estate was unjustly enriched by its receipt of the Policy's proceeds.

Additional facts will be supplied below as needed.

## STANDARD OF REVIEW

The Defendants move to dismiss this action for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[2; 3]

The plaintiff bears the burden of providing subject matter jurisdiction when a defendant moves to dismiss under Rule 12(b)(1). *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,

---

[2] Pruco also moves to dismiss for failure to join a party under Fed. R. Civ. P. 19, based on the threshold theory that the Court lacks personal jurisdiction over the Estate. Because I conclude that the Court has personal jurisdiction over the Estate, I need not reach Pruco's Rule 19 argument. *See* Section II, *below*.

[3] The Federal Rules of Civil Procedure will be referenced in this Memorandum Opinion as the "Rules."

166 F.3d 642, 647 (4th Cir. 1999). In such cases, the pleadings constitute "mere evidence" regarding subject-matter jurisdiction, and the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The Court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Under Rule 12(b)(2), the ultimate burden is on the plaintiff to prove personal jurisdiction by a preponderance of the evidence. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Where, as here, "the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." *Id.* "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

Rule 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In reviewing a Motion to Dismiss under Rule 12(b)(6), this Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). Significantly, a court cannot "favor[ ] its perception of the relevant events over the narrative offered by the complaint, thereby recasting 'plausibility' into 'probability.'" *Id.*

## DISCUSSION

Both Defendants move to dismiss Beltway's Second Amended Complaint primarily on jurisdictional grounds. They both argue that the Court lacks *in rem* jurisdiction over the Estate because it is located in Florida, and that the Court lacks personal jurisdiction over the Estate because it is probated in Florida and because neither the Estate nor Ms. Moore on the Estate's behalf have conducted any business in Maryland that would confer personal jurisdiction in this Court. For the reasons explained below, I agree that there is no *in rem* jurisdiction in this case. I do find, however, that the Court has personal jurisdiction over Mr. Moore's Estate and therefore deny the Defendants' Motions to Dismiss.

**I.     This Court does not have *in rem* jurisdiction over the Estate.**

Beltway asserts in its Second Amended Complaint that the Court "has *in rem* jurisdiction of the subject insurance policy and its proceeds as the insurance policy was issued in the state of Maryland, to an owner who at the time resided and transacted business in the state of Maryland,

with premiums paid by a company operating in the state of Maryland, with an intended beneficiary that operated in the State of Maryland." SAC ¶ 3. Beltway misunderstands how *in rem* jurisdiction operates.

Whether a court has *in rem* jurisdiction over disputed property is a simple question. *Kortobi v. Kass*, 957 A.2d 1128, 1132 (Md. App. 2008), *aff'd*, 978 A.2d 247 (Md. 2009). "To exercise *in rem* jurisdiction over a *res*, the court must have the *res* within its jurisdiction." *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 529 (4th Cir. 2006). Here, the *res* in question is the proceeds of the Policy, which the parties do not dispute were paid to the Estate in Florida. Because the *res* at issue in this case in not within the Court's territorial jurisdiction, the Court lacks *in rem* jurisdiction to adjudicate the parties' rights with respect to the Policy proceeds.

**II.     Personal jurisdiction**

The Defendants argue next that the Court lacks personal jurisdiction over Mr. Moore's Estate. The Defendants reason that Beltway has not alleged "that the Estate has any contacts with Maryland" or "that any of the Estate business was performed on behalf of the Estate in Maryland." Estate MTD at 5; Pruco MTD at 6 (adopting the Estate's jurisdictional argument). From there, Pruco argues that the lack of personal jurisdiction over the Estate requires Pruco's dismissal as well because the Estate is "an indispensable party under Rule 19(b)." I do not agree.

The Defendants' jurisdictional analysis operates on the assumption that the Court's personal jurisdiction over Mr. Moore during his lifetime has no bearing on the Court's jurisdiction over his Estate. The Defendants cite no Maryland law, and I have found none, that directly addresses this question. However, there are strong indications in related Maryland case law that Maryland Courts would consider Mr. Moore's activities during his lifetime relevant to determining whether they could exercise personal jurisdiction over his Estate.

In *Kotorbi v. Kass*, an action for damages arising out of an automobile accident, the Maryland Court of Special Appeals held that Maryland lacked personal jurisdiction over an estate probated in the District of Columbia, even though the estate's personal representative resided and was personally served in Maryland. 957 A.2d 1128 (Md. App. 2008). The Court of Special Appeals concluded that, while "Maryland might have jurisdiction over [the personal representative] individually, it does not follow that Maryland has personal jurisdiction over a foreign estate" simply by virtue of the personal representative's residence in the state. *Id.* at 1138. The Court concluded that it is the *decedent's* status, not the representative's residence, "that is the focus of [the] jurisdictional inquiry," and because the record was "devoid of any evidence that either [the decedent], or his estate, established minimum contacts with Maryland or that they purposely availed themselves of its laws," the Court of Special Appeals found that Maryland lacked personal jurisdiction over the Estate. *Id.*

The Maryland Court of Appeals affirmed and echoed the intermediate appellate court's analysis:

> The only contacts with Maryland upon which Kortobi [(the Plaintiff)] relies are Kass's [(the personal representative)] personal residence in Maryland, and his being served with process there. Having rejected Kortobi's claim that these fortuitous circumstances are sufficient for personal jurisdiction to lie in Maryland under § 6–102, we likewise find that there are insufficient contacts for jurisdiction under Maryland's Long–Arm Statute, § 6–103. **The record is devoid of any evidence that either <u>Leach [(the decedent)]</u>, or Kass acting on behalf of the Estate, established minimum contacts with Maryland, or that <u>either</u> purposefully availed himself of its laws.** We reiterate that: (1) Leach was domiciled in the District of Columbia; (2) all of his assets, both real and personal, were located in the District of Columbia; (3) the beneficiaries of the Estate are residents of the District of Columbia; and (4) the motor vehicle accident giving rise to the present dispute occurred in the District of Columbia. **There is simply no basis from which to conclude that jurisdiction lies in Maryland over the Leach Estate for the purposes of Kortobi's motor tort action**."

*Kortobi v. Kass*, 978 A.2d 247, 259–60 (2009) (emphasis added).

The reasoning of the Maryland Courts of Appeal in *Kortobi* is consistent with the relevant section of the Restatement (Second) of Conflict of Laws. The Restatement provides that "[a]n action may be maintained against a foreign executor or administrator upon a claim against the decedent when the local law of the forum authorizes suit in the state against the executor or administrator and: (a) **suit could have been maintained within the state against the decedent during his lifetime because of the existence of a basis of jurisdiction other than mere physical presence**[.]" Restatement (Second) Conflict of Laws § 358.[4]

In light of the Maryland Courts' reasoning in *Kortobi*, I conclude that the appropriate jurisdictional inquiry here is whether this Court could have exercised personal jurisdiction over Mr. Moore at the time of his death. For the reasons below, I find that it could, and that it can therefore exercise personal jurisdiction over his Estate in this case.

Whether a court may exercise personal jurisdiction over a foreign defendant requires assessing *first* whether such jurisdiction is authorized under Maryland's long arm statute, *see* Md. Code § 6-103 of the Courts and Judicial Proceedings Article ("Long Arm Statute"), and *second* whether "the exercise of jurisdiction comports with due process requirements of the Fourteenth

---

[4] Pruco cites *Kortobi* for the seemingly inconsistent proposition that "in order to establish specific personal jurisdiction over an estate, the personal representative of the estate 'must have made those contacts in her representative capacity on behalf of the [e]state." Pruco MTD at 6–7. That language in *Kortobi* addresses a different factual scenario than that presented here and does not support Pruco's position in this case. In *Kortobi*, the issue was whether the personal representative's residency alone conferred personal jurisdiction over the foreign estate he represented. It was in that context that the Court concluded that, to impute personal jurisdiction to an estate based on a personal representatives actions, those actions must have been undertaken on behalf of the estate. *See also Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003) ("As a creature of the Florida probate regime, the Estate resides in Florida. Thus, for an estate probated in a foreign jurisdiction to establish the type of continuous and systematic contact necessary for general jurisdiction, the representative of the Estate must have made those contacts in her representative capacity, on behalf of the Estate. It is not sufficient that the personal representative herself lives in Texas."). *Kortobi's* more general discussion of personal jurisdiction over an estate, as discussed above, guides the conclusion in this case.

Amendment." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 576 (2005). Maryland courts have "consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution," and that the two inquiries therefore merge. *Id.* "A court's exercise of personal jurisdiction over a nonresident defendant satisfies due process requirements if the defendant has 'minimum contacts' with the forum, so that to require the defendant to defend its interests in the forum state 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be "general" or "specific" in nature. Specific jurisdiction may exist when "the defendant's contacts with the forum state form the basis for the suit," while general jurisdiction requires "more persistent contacts with the State." *Pinner v. Pinner*, 201 A.2d 26, 36 (Md. App. 2019), *aff'd* 225 A.3d 433 (Md. 2020). Beltway argues that this Court can exercise both general and specific jurisdiction over Mr. Moore's Estate. Opp. at 5. Because the facts forming the "basis for this suit" are more thoroughly alleged in the Second Amended Complaint, I will begin by determining whether the Court would have had specific personal jurisdiction over Mr. Moore, and whether it therefore has specific personal jurisdiction over his Estate.

Maryland courts consider three prongs when determining whether they may exercise specific personal jurisdiction over a foreign defendant: "(1) the extent to which the defendant has purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Pinner*, 201 A.2d at 36 (quoting *Beyond Sys., Inc.*, 878 A.2d at 26.

9

The allegations of the Second Amended Complaint establish that Mr. Moore "purposely availed" himself of "the privilege of conducting activities" in Maryland, and that Beltway's claims arise out of Mr. Moore's Maryland activities. Mr. Moore was a shareholder, director, and primary officer of Beltway, a corporation organized under the laws of Maryland. SAC ¶¶ 5–7. Mr. Moore resided in Maryland at the time that Beltway purchased the Policy upon Mr. Moore's life. *Id.* ¶ 12. Mr. Moore was the Policy's owner, i*d.* ¶ 7, the Policy's named beneficiary was a Maryland resident, *id.* ¶ 12, and Beltway paid the Policy premiums, presumably from its Maryland offices, *id.* ¶¶ 9–10. Plainly, Mr. Moore had significant contacts with Maryland, and the allegations of the Second Amended Complaint arise directly out of those contacts. *Id.* ¶¶ 11–14.

The final prong of the specific jurisdiction analysis concerns whether the court's exercise of personal jurisdiction is constitutionally reasonable. This assessment requires courts to consider and balance the following interests: "[(1)] the burden on the defendant; [(2)] the interests of the forum state; [(3)] the plaintiff's interest in obtaining relief; [(4)] the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and [(5)] the shared interest of the several states in furthering fundamental substantive social policies." *Pinner*, 201 A.3d at 39 (quoting *Camelback Ski Corp. v. Behning*, 539 A.2d 1107 (Md. 1988)). "The Supreme Court has asserted that, once purposeful availment has been established, a defendant must make a 'compelling case' that it is unreasonable or unfair to require it to defend a suit out of State." *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 835 (Md. App. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Neither Defendant in this case has argued that this Court's exercise of personal jurisdiction over the Estate would be constitutionally unreasonable.

The "burden on the defendant" is "always a primary concern" when making a jurisdictional determination. *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Here, adjudicating this case in Maryland does not present an unreasonable burden on either Pruco or the Estate. For Pruco, which is headquartered in New Jersey, adjudicating this case in Maryland likely reduces its burden given that the obvious alternative would be to adjudicate these claims in Florida, where the Estate is probated. And although there is some practical burden on Ms. Moore, a Florida resident, that burden is not unreasonable given Mr. Moore's contacts with Maryland and Ms. Moore's role as personal representative for his Estate. *See id.* at 297 (finding relevant to the analysis whether a defendant can "reasonably anticipate being haled into court" in the forum state). Beltway, moreover, has an interest in obtaining "convenient and effective relief" under the Policy that it paid for in Maryland, and under which it claims to be the intended beneficiary. *Id.*

The remaining considerations, which concern the interests of the states and judicial economy, do not alter the analysis. The State of Maryland has an interest in exercising jurisdiction over an insurance company that issues policies in Maryland, and over the estate of a policy holder who resided in Maryland and who owned a life insurance policy issued in the state. Furthermore, although there may be overlap between this action and the probate proceedings in Florida, the two cases differ in fundamental ways; the Florida probate court is tasked with administering Mr. Moore's Estate, while in this an action, Beltway seeks declaratory relief against Pruco with respect to its rights under the Policy. Finally, the "shared interest of the several states in furthering fundamental, substantive, social policies" has no obvious application in this case.

Accordingly, for the reasons summarized above, I conclude that this Court has specific personal jurisdiction over the Estate and the Estate Motion to Dismiss will be denied on those

grounds. Additionally, because the Estate will remain a party to this action, Pruco's argument under Rule 19 is moot and is Motion to Dismiss for failure to join an indispensable party is denied.

### III. Jurisdiction under the Declaratory Judgment Act

The Defendants alternatively argue that this Court should decline exercise its jurisdiction under the Declaratory Judgment Act. Pruco MTD at 9–11. For the reasons explained below, I will not abstain from exercising jurisdiction in this action.

A district court may exercise jurisdiction over a declaratory judgment action when "(1) the complaint alleges an 'actual controversy' between the parties of 'sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties . . . ; and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc*., 386 F.3d 581, 592 (4th Cir. 2004). Pruco contends that this case cannot satisfy either the first or third requirement.

Regarding the first requirement, that there exists an "actual controversy" between the parties, Pruco argues that "there is no [] controversy between Beltway and [Pruco]" because Pruco has "already paid the death benefits to the Estate in Florida" and "Pruco cannot pay any proceeds it no longer possesses." Pruco MTD at 10. I disagree.

The Second Amended Complaint alleges that Beltway was intended beneficiary under the Policy, and that Pruco improperly made payment to the Estate. It cannot follow that Pruco is rendered judgment proof by virtue of that allegedly improper payment, particularly when, as Beltway alleges, Beltway made a claim for the Policy proceeds *before* Pruco paid those proceeds to the Estate.[5] SAC ¶¶ 11–14. At this early stage of the litigation, it does not matter how unlikely

---

[5] It bears mentioning that Pruco could have avoided this risk by filing an interpleader action. "The classic circumstance that interpleader has addressed is where one party, a 'stakeholder,' has money or other property that is claimed, or may be claimed, by two or more other parties, the

that outcome may be—I am required to construe the allegations of the Second Amended Complaint in Beltway's favor. *See SD3, LLC,* 801 F.3d 412, 422 (4th Cir. 2015) (explaining that a court cannot "favor[ ] its perception of the relevant events over the narrative offered by the complaint, thereby recasting 'plausibility' into 'probability.'").[6] Accordingly, there remains at this stage an "actual controversy" between Pruco and Beltway under the Declaratory Judgment Act.

Pruco claims next that it would be an abuse of discretion to exercise jurisdiction in this case. Pruco relies primarily on *Trustguard Insurance Company v. Collins*, 942 F.3d 195 (4th Cir. 2019), in which the Fourth Circuit concluded that the district court abused its discretion by reaching the merits in a declaratory judgment action between an insurer and its insured. *Trustguard* provides the following helpful overview of the applicable principles:

> Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction ... *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added [by *Trustguard* opinion]). This Act gives federal courts discretion to decide whether to declare the rights of litigants. . . . Whether exercising this jurisdiction is appropriate must be informed by the teachings and experience of the courts concerning the functions and extent of federal judicial power. Put another way, in the declaratory judgment context, the normal principle that federal courts should

---

'claimants,' creating a risk of inconsistent claims to the property or judgments against the stakeholder that exceed the value of the property. The interpleader procedure permits the stakeholder to join all claimants and efficiently resolve their claims to a corpus in a single forum and proceeding." *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 244 (4th Cir. 2021). *See also* Compl. ¶ 14; Pruco MTD at 12. Pruco's decision not to file an interpleader action renders its risk of liability in excess of the Policy proceeds entirely an issue of its own making.

[6] The Estate also argues, in a single paragraph, that Beltway lacks standing to sue it because "Beltway has no legal interest in the Policy." Estate MTD at 6. I disagree. The Second Amended Complaint alleges that Beltway was the intended beneficiary of the Policy, even though it was never named as a beneficiary in writing. *See generally* SAC. Under Maryland law, "parties to a contract [and] third-party intended beneficiaries have standing to challenge the validity or application of a contract." *Precision Small Engines, Inc. v. City of Coll. Park*, 179 A.3d 1019, 1027 (Md. 2018). And where "the standing question [is] inextricably bound with the merits of [the] plaintiff's claims," the plaintiff has standing to sue provided they have a plausible claim. *Higdon v. Lincoln Nat. Ins. Co.*, No. CIV.A. ELH-13-2152, 2014 WL 6951290, at *9 (D. Md. Dec. 8, 2014) (citing *Parlette v. Parlette*, 596 A.2d 665, 669 (Md. App. 1991); *Milbourne v. Conseco Servs., LLC*, 181 F.Supp.2d 466, 468 (D.Md.2002)). Such is the case in this action.

> adjudicate claims within their jurisdiction yields to considerations of practicality and judicial administration.
>
> But even where jurisdiction is not discretionary, courts may abstain from exercising jurisdiction under certain circumstances that may intrude on the prerogative of state courts. Abstention helps avoid duplicative litigation and interference with state-court proceedings.
>
> For similar reasons, in declaratory judgment actions, courts must consider whether federalism, efficiency, and comity counsel against exercising jurisdiction when an ongoing proceeding in state court overlaps with the federal case. In making this determination, we often look to (1) the state's interest in having its own courts decide the issue; (2) the state courts' ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping. . . . .
>
> In deciding whether to exercise the discretion to issue a declaratory judgment, we must look closely at any potentially preclusive consequences that our decision might have on the state-court proceeding, or vice versa. Preclusion following an imprudent federal decision might frustrate the orderly progress of the state-court proceedings by leaving the state court with some parts of the case foreclosed from further examination but still other parts in need of full scale resolution.

*Trustgard Ins. Co. v. Collins*, 942 F.3d at 201–02.

Applying those principles, the Fourth Circuit in *Trustguard* concluded that the federal court should not have exercised its jurisdiction to resolve state law claims that were already proceeding in state court. *Id.* at 202–204. The Fourth Circuit emphasized that the district court had erroneously resolved issues that were entangled with those before the state court based on a "thin and ambiguous" record, potentially precluding the resolution of similar issues by state court with the benefit of a "more robust record." *Id.* at 202–204.

Pruco argues that the same analysis applies here, and that "the discretionary exercise of jurisdiction would [] have an impact on the ongoing Florida probate dispute involving the Estate." Pruco MTD at 11. Pruco elaborates that "Beltway's claims in this case are premised on the allegation that Messrs. Moore and Williams failed to designate Beltway as the proper beneficiary

14

under the Policy by mistake. Beltway has made, *or will likely make*, the same claim in the Florida probate action, particularly because it seeks an unjust enrichment claim against the Estate in this litigation. The parallel suits, therefore, have a strong *potential* to result in inconsistent factual determinations and judgments which *could* result in confusion and 'unnecessary entanglement' with the Florida probate action." *Id.* (emphasis added).

The conditional language in Pruco's argument is telling. Pruco does not claim that the probate court has made any decisions bearing on the present action, or that any such issues have actually been brought before that court. Pruco also does not address whether the Florida probate court has jurisdiction to adjudicate the claims pending in this action, or whether there is a developed record in that court that would facilitate a more efficient resolution of the issues raised here by Beltway. Finally, Pruco does not explain why the Florida probate court would be better situated to decide this dispute regarding a Maryland life insurance policy.

For those reasons, I conclude that it is appropriate for this Court to exercise its jurisdiction in this action, and I will not abstain from doing so.

## IV. The Second Amended Complaint states a claim against Pruco

Pruco argues finally that I should find that Pruco cannot be held liable as a matter of Maryland law for two distinct reasons: *first* because Pruco paid the Policy proceeds under the terms of the Policy in good faith, and *second* because Maryland law requires Beltway to establish that "the owner was determined to change the beneficiary" and the owner "did everything to the best of his/her ability to effect that change." Pruco MTD at 11–15. Having reviewed the law Pruco cites in its Motion, I conclude that their arguments are premature.

Regarding its good faith payment to the Estate under the Policy, Pruco relies on this Court's opinion in *Crosby v. Crosby*, 785 F. Supp. 1227, 1228–29 (D. Md. 1992), aff'd, 986 F.2d 79 (4th

15

Cir. 1993). *Crosby* provides that "[t]he general rule is that an insurer who in good faith pays the proceeds of an insurance policy to a person, who by the policy is the proper recipient, is discharged from further liability. . . . The obvious purpose of such a rule is to protect insurers from being required to make multiple payments on the same policy." *Id.* It does not follow from that "general rule" that insurers, under any and all circumstances, categorically act in good faith when paying the proceeds to the individual identified in the applicable policy. Whether Pruco acted in good faith in this case is a fact intensive inquiry that is not appropriate for resolution on a motion to dismiss, particularly when the Second Amended Complaint alleges that Beltway paid the Policy premiums and had made a claim under the Policy before Pruco paid the proceeds to the Estate. SAC ¶¶ 9–10; 14.

Pruco's second argument, that Beltway cannot establish that any steps were taken to change the Policy's beneficiary prior to Mr. Moore's death likewise fails. Pruco relies primarily on the Maryland Court of Appeals's decision in *Urquhart v. Alexander & Alexander, Inc.*, 147 A.2d 213 (Md. 1958), which it summarizes as follows:

> In *Urquhart,* for example, the life insurance policy at issue designated the insured/decedent's employer as the sole beneficiary. **The insured/decedent then promised his wife that that he would designate her the beneficiary to a life insurance policy after the loan to his employer was paid off. Despite repeated promises, however, the insured/decedent did not take any steps during his life to effect any delivery of the life insurance policy to his wife**. Accordingly, the Court of Appeals of Maryland held that the wife was not the beneficiary under the policy, and directed the remaining proceeds to the insured/decedent's estate.

Pruco MTD at 13 (citations omitted) (emphasis added). Pruco's description demonstrates that *Urquhart* addresses circumstances in which a policy holder is aware of the identify of the beneficiary, makes promises to change the identity of the beneficiary, but does not in fact take any steps to do so. *Id.* Here, by contrast, the Second Amended Complaint alleges that Mr. Moore had *always* intended for Beltway to be the Policy's beneficiary and was never aware that Beltway was

16

not the beneficiary prior his death. SAC ¶¶ 7–10. The reasoning in *Urquhart*, at least based on the record currently before the Court, does not apply in this case.

There is no doubt that Beltway faces an uphill battle[7] to prove that it was the intended beneficiary under Mr. Moore's life insurance policy when the Policy's written terms contradict that assertion, and neither Mr. Moore nor Mr. Williams is here to enlighten the Court as to their intent at the time the Policy was issued. But making a determination on those issues before the parties have the opportunity to conduct discovery would be premature. Accordingly, I conclude that, construing the allegations of the Second Amended Complaint in Beltway's favor, Beltway has stated a claim against Pruco and Pruco's Motion to Dismiss must be denied.

## CONCLUSION

For reasons identified in this Memorandum Opinion, the Defendants' Motions to Dismiss are DENIED.

---

[7] The same is true for Beltway's unjust enrichment claim against the Estate. The Estate points out in its Motion that "it is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." Estate MTD at 8 (citing *FLF, Inc. v. World Publ'n, Inc*., 999 F. Supp. 640, 642 (D. Md. 1998)). The Estate is correct that a party may not "in desperation … turn to quasi-contract for recovery" when their expectations are not realized under a valid contract. *Id.* (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1126 (Md. App. 1984)). But Rule 8(d) permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically." The Rule expressly states that a "party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc*., 190 F. Supp. 2d 785, 792 (D. Md. 2002) (noting that a party may plead both breach of contract and quantum meruit despite the fact that it may not recover under both theories); *Kerrigan v. Bd. of Educ. of Carroll Cnty.,* No. JKB-14-3153, 2016 WL 470827, at *5 (D. Md. Feb. 8, 2016) (quoting *Pearson v. FirstEnergy Corp. Pension Plan*, 76 F. Supp. 3d 669, 675 (N.D. Ohio 2014)) ("[T]he fact that...alternatively pled claims are mutually exclusive is of no consequence at the pleading stage.").

**ORDER**

For the reasons stated in the Memorandum Opinion signed this same date, it is hereby

ORDERED that:

1. Lisa M. Moore's Motion to Dismiss Second Amended Complaint, ECF No. 28, is DENIED.

2. Pruco Life Insurance Company's Motion to Dismiss Second Amended Complaint, ECF No. 29, is DENIED.

3. Defendants shall file their Answers to the Second Amended Complaint, ECF No. 25, on or before September 27, 2022, after which the Court will enter a Scheduling Order and schedule a Federal Rule of Civil Procedure 16 conference with the parties to discuss further trial proceedings.

Date:   September 6, 2022                              _____/S/_____
                                                       Paul W. Grimm
                                                       United States District Judge